## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| MICHAEL B. KRATVILLE, | Case No. 17-CV-4453 (MJD/TNL) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| UNITED STATES BUREAU OF PRISONS; JOHN DOES; and JANE DOES, | |
| Defendants. | |

Michael B. Kratville, pro se.

Bahram Samie, United States Attorney's Office, for defendant United States Bureau of Prisons.

\*\*\*

Plaintiff Michael B. Kratville is a prisoner at the Federal Prison Camp near Duluth, Minnesota ("FPC-Duluth") and was so at all times relevant to this lawsuit. Kratville has filed a complaint seeking both monetary and prospective injunctive relief from defendant United States Bureau of Prisons ("BOP"). The BOP seeks dismissal of part of the complaint for lack of subject-matter jurisdiction and seeks summary judgment on the remainder of the complaint. *See* ECF No. 16. That motion has been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. This Court recommends granting the motion for the reasons set forth below.

1

Kratville's complaint includes three discrete sets of factual allegations, along with separate legal claims correlating with those factual allegations.

*First*, Kratville alleges that the BOP violated federal law by delaying his transfer from FPC-Duluth to a residential re-entry center ("RRC"). *See* Compl. ¶¶ 22-46 [ECF No. 1]; Addendum to Complaint [ECF No. 6]. Not long after Kratville initiated this action, these claims were severed for adjudication in a separate habeas corpus proceeding. *See* ECF No. 8; *Kratville v. Warden of Federal Prison Camp*, No. 17-CV-5209 (MJD/TNL) (D. Minn. filed Nov. 22, 2017). Accordingly, the allegations and claims related to Kratville's RRC placement will not be considered in this Recommendation.

Second, Kratville alleges that BOP officials violated his federal constitutional rights by interfering with and reading mail intended to be sent by Kratville to his attorney Karen Vervaecke. *See* Compl. ¶¶ 3-11, 17. These allegations comprise the bulk of the complaint, but because (as explained below) Kratville has plainly failed to exhaust administrative remedies with respect to the claims arising from these allegations, extended discussion of the specific allegations is unnecessary here.[1]

Third, Kratville alleges that BOP officials violated his federal constitutional rights by interfering with and reading mail intended to be sent to a *different* attorney; that

---

[1] Kratville also requests that Travis Thomford be added as a defendant to this action due to his alleged role in the interference with mail directed to Vervaecke. Because Kratville has failed to exhaust administrative remedies on these claims, his attempt to add Thomford as a defendant to the complaint based on his role in these events is futile. Kratville's request to amend the complaint to add Thomford should be denied on that basis.

attorney represented a friend of Kratville's who was then detained pending federal criminal charges.  *See* Compl. ¶¶ 12-16.  Because Kratville asked that the attorney forward the letters to his friend — who, again, was then detained on federal charges — Kratville was found to have violated BOP policy by engaging in inmate-to-inmate correspondence.  *See* Declaration of Shannon Boldt ("Boldt Decl.") Ex. C-D [ECF No. 19-1 at 9-32].  BOP officials suspended Kratville's e-mail and phone privileges for 90 days due to the violation.  *See id*. at 20-21.  Kratville claims that BOP officials misapplied their own policy in barring the correspondence and that, in any event, the policy violates his First Amendment rights.

Based on these claims, Kratville seeks monetary relief from the BOP,[2] along with prospective relief in the form of the injunction prohibiting the BOP from engaging in further unlawful behavior.

As an initial matter, the BOP argues that, as an agency of the federal government, it cannot be sued for monetary damages unless it has consented to the suit.  The BOP is

---

[2] Kratville seeks relief under a number of statutes, but many of these are criminal-law statutes.  *See* Compl. ¶ 18.  Other of the statutes are found in Title 39 of the United States Code, which organizes the operations and activities of the United States Postal Service, not that of prison officials or individuals not employed by the postal service.  *Id.*  None of these statutes cited by Kratville creates a private right of action.  Kratville also cites 42 U.S.C. § 1983 as a basis for relief, but because Kratville alleges wrongdoing by federal officials, not state officials, any claims for constitutional violations are more appropriately raised under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).  This Court will consider the claims as being raised under *Bivens*, even though Kratville, as an attorney, is not necessarily entitled to the liberal construction of pleadings ordinarily afforded to pro se litigants.  *See, e.g.*, *Garcia v. Bank of America, N.A.*, No. 13-CV-0383 (DWF/LIB), 2014 WL 5685518 at *1 n.2 (D. Minn. Feb. 5, 2014) (collecting cases).

3

correct.  "It is axiomatic that the United States may not be sued [for money damages] without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983); *accord McCourt v. Rios*, No. 08-CV-6411 (PAM/RLE), 2010 WL 3269905, at *7 (D. Minn. July 16, 2010) ("[T]he doctrine of sovereign immunity holds that the United States, and its agencies and instrumentalities — including the [BOP] — are immune from suit . . . .").  The government may consent to suit either through its conduct during the lawsuit itself — i.e., by failing to invoke its sovereign immunity as a defense, *cf. United States v. Metropolitan St. Louis Sewer Dist.*, 578 F.3d 722, 725 (8th Cir. 2009) (discussing state sovereign immunity); or through prospective action — i.e., a statute or contract permitting suit on particular claims, *see Arneson v. Callahan*, 128 F.3d 1243, 1245 (8th Cir. 1997).  The BOP has not waived its sovereign immunity, either generally or in this specific matter, with respect to constitutional claims brought against it by Kratville.  During the course of this lawsuit, the BOP invoked its sovereign immunity as a defense to Kratville's claims for monetary relief at the first opportunity for doing so.  *See* ECF No. 16.  Further, the government has not prospectively waived sovereign immunity with respect to constitutional claims; "[i]t is well settled that a *Bivens* action cannot be prosecuted against the United States and its agencies because of sovereign immunity."  *Buford v. Runyon*, 160 F.3d 1199, 1203 (8th Cir. 1998) (citing *Laswell v. Brown*, 683 F.2d 261, 268 (8th Cir. 1982)).  Simply put, Kratville may not seek money from the BOP for alleged violations of constitutional rights committed by its employees.  All claims for monetary relief brought against the BOP must therefore be dismissed without prejudice.

The BOP also contends that Kratville failed to exhaust administrative remedies for his claims. This Court largely agrees. The Prison Litigation Reform Act ("PLRA") mandates that prisoners exhaust "'such administrative remedies as are available' before bringing suit to challenge prison conditions." *Ross v. Blake*, 136 S. Ct. 1850, 1854-55 (2016) (quoting 42 U.S.C. § 1997e(a)). The exhaustion requirement, once invoked as an affirmative defense, is mandatory; a district court may not excuse a prisoner's failure to exhaust available administrative remedies. *See Woodford v. Ngo*, 548 U.S. 81, 85 (2006).

Section 1997e(a) does require, however, that administrative remedies be "available" if a litigant is to invoke the failure to exhaust that remedy as a defense to suit. An administrative procedure may be unavailable "when (despite what regulations or guidance materials may promise) it operates as a simple dead end — with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Ross*, 136 S. Ct. at 1859. Similarly, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id*. Finally, administrative remedies can be said to be unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id*. at 1860.

The BOP has established a four-step administrative-review process for prisoner claims. *See* 28 C.F.R. §§ 542.10-542.19. At step one, the prisoner must attempt to informally resolve the issue with prison staff; the procedures for informal resolution have been established on an institution-by-institution basis. *See* 28 C.F.R. § 542.13(a). If attempts at informal resolution fail, a prisoner may then submit a formal administrative remedy request to the institution staff member designated to receive such requests. *See*

5

28 C.F.R. § 542.14. If the prisoner is not satisfied with the response to that formal request, he may appeal the decision to the appropriate regional director. *See* 28 C.F.R. § 542.15(a). Finally, if the prisoner remains dissatisfied after receiving the Regional Director's decision, he may appeal that decision to the BOP Central Office. *Id.*

An alternative, abbreviated administrative-review process has been established for appeals related to disciplinary actions. 28 C.F.R. § 542.14(d). A prisoner appealing a disciplinary action may bypass review at the institution level and submit his request directly to the Regional Director, after which appeal then proceeds as usual to the BOP Central Office. *Id.*

Kratville has completed only one full round of administrative review related to a grievance while incarcerated by the BOP. *See* Boldt Decl. ¶¶ 15-18. During that completed administrative proceeding, Kratville challenged the discipline (loss of e-mail and phone access) handed down by BOP officials resulting from his indirect communications with his incarcerated friend. *See* Boldt Decl. Ex. D. Never has Kratville submitted anything other than informal grievances relating to any of the other allegations raised in the complaint. Plainly, then, Kratville appears to have failed to exhaust administrative remedies with respect to much of the complaint, including the claims related to the letters intended to be sent to his attorney Karen Vervaecke, which have never been challenged through formal prison administrative proceedings.

Kratville nevertheless attempts to avoid the clear application of § 1997e with respect to the claims he failed to present administratively to the BOP. None of those attempts is compelling.

6

First, Kratville contends that he exhausted administrative remedies through means other than official administrative review, such as the filing of informal grievances and requests for relief. But informal review is the *first* step in the administrative-review process, not the last. *See* 28 C.F.R. § 542.13. A prisoner does not "exhaust" administrative remedies by completing only the first of multiple available levels of review.

Second, Kratville argues that administrative remedies were not available to him because certain grievances filed with the warden of FPC-Duluth were not timely denied, thereby preventing him from seeking further appellate review of the denial. BOP records show no evidence of formal grievances being filed with the warden of FPC-Duluth, *see* Boldt Decl. ¶¶ 15-18, but even leaving that aside, BOP regulation provides that "[i]f the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." 28 C.F.R. § 542.18. Untimely action by the warden of FPC-Duluth would not have precluded Kratville from seeking appellate review of any grievance he might have submitted, and thus further administrative review remained available to him.

Third, Kratville argues that the administrative-review process was futile because, once the putatively unlawful actions had already taken place, the BOP could not have offered effective relief on any of his claims. The argument is puzzling; the crux of Kratville's pleading is that BOP policies infringe on his constitutional rights, and among the relief sought in this action is curtailment of the allegedly unconstitutional policies. The BOP no less than the Court could effect such prospective relief on behalf of Kratville

7

and similarly situated prisoners. In any event, "[t]he PLRA makes exhaustion of prison administrative remedies mandatory, regardless of the efficacy or adequacy of the grievance process. Thus, a prisoner must exhaust his administrative remedies, even if he or she believes the process is futile or requests relief that the administrative body does not have power to grant." *See Barber v. Schmidt*, No. 10-CV-3317 (JRT/SER), 2011 WL 3476878, at *4 (D. Minn. July 12, 2011) (citations omitted).

Fourth, Kratville contends that the BOP administrative-review process was so "opaque" that it was, "practically speaking, incapable of use." *Ross*, 136 S. Ct. at 1859. This is belied by the exhibits demonstrated by Kratville himself, which show that prisoners are informed in clear and uncomplicated language exactly how to pursue administrative remedies through each step of the process. *See* Declaration of Michael Kratville Ex. A at 5-6 [ECF No. 25-1]. Kratville complains that he was never told that exhaustion of administrative remedies might be required before he could pursue relief in the federal courts, but this does not render the administrative-review process *itself* opaque. There was no reason for Kratville to be confused about how to procure administrative review at each step of the process, even if Kratville did not know what might result from failing to procure administrative review.

Accordingly, any claims not related to the letters sent by Kratville indirectly to his incarcerated friend — which is discussed in greater detail below — are plainly unexhausted. Those claims must be dismissed without prejudice on that basis. *See Porter v. Sturm*, 781 F.3d 448, 452 (8th Cir. 2015).

Unlike the claims related to the letters sent to his own attorney, one claim was submitted by Kratville to the BOP — that the BOP had wrongfully punished him for sending letters to his incarcerated friend — and this grievance was pursued to the highest level of administrative review.  The BOP nevertheless argues that any claims related to this letter should also be denied for failure to exhaust administrative remedies, because (1) Kratville invoked the truncated review procedures necessary to appeal whether he was afforded due process during the disciplinary proceedings, not the more extended process required for challenging BOP policy itself; and (2) Kratville did not present the specific claim that he now wishes to prosecute in this litigation during administrative review.

Insofar as the BOP argues that Kratville's grievance was *procedurally* flawed and should therefore be disregarded in determining whether Kratville has exhausted his claims, this Court rejects the argument.  Kratville was disciplined by the BOP for attempting to send letters to another inmate.  The BOP provides a truncated review process where challenges to disciplinary proceedings are raised.  Naturally, Kratville challenged that discipline through the BOP's specified procedures for doing so. Requiring prisoners to bifurcate their claims across multiple administrative proceedings — one for challenging the discipline itself; another for challenging the legality of the policy under which the discipline was imposed — would be to risk "thwart[ing] inmates from taking advantage of a grievance process through machination."  *Ross*, 136 S. Ct. at 1860.  This is especially true where the prisoner is permitted to appeal his grievances up the chain of command as usual without warning that he might be invoking the incorrect procedure for the specific claims being raised.

Had Kratville merely gone about things the wrong way by initiating at the regional level rather than the institutional level grievances that were fully considered during administrative review, this Court would regard those claims as exhausted and proceed to the merits of those claims. That said, there is more force to the BOP's argument that, regardless of the procedures invoked by Kratville, his actual claim raised during the lone round of completed administrative review does not fully match in *substance* the claims he is now presenting in this litigation. The argument Kratville put before the BOP was that he did not violate BOP policy as written and that he therefore should not have been punished. Kratville renews that argument here, but he also claims that even if he did violate BOP policy by mailing a letter intended to be sent to another inmate, that policy should be invalidated for violating his rights under the First Amendment. This claim was never put before the BOP during the completed administrative-review proceedings. *See* Boldt Decl. Ex. C-D. The claim regarding the legality of the BOP policy therefore cannot be said to have been exhausted by Kratville. *See, e.g.*, *Butala v. Gerlicher*, No. 13-CV-0633 (PJS/TNL), 2014 WL 241865, at *7 (D. Minn. Jan. 22, 2014) ("Here, the problem is that Butala quite specifically objected that his transfer was unlawful for *y* reason, but now seeks to sue defendants on the ground that his transfer was unlawful for *z* reason — a reason that Butala never grieved, and thus never gave defendants an opportunity to address.").

Thus all that remains of Kratville's complaint is his request for prospective relief on his claim that he did not, in fact, violate BOP policy when he mailed a letter to his friend's attorney. Although neither party presses the issue, this claim is almost surely

10

moot and, if so, must be denied on that ground. "A case becomes moot — and therefore no longer a 'Case' or 'Controversy' for purposes of Article III — 'when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.'" *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982)). Kratville suffered discipline in the forms of loss of e-mail and telephone privileges for 90 days due to his attempted interaction, but those penalties (which were handed down in January 2016) expired long ago, and there is no evidence that this case falls within an exception to the mootness doctrine. *See* Boldt Decl. Ex. C. [ECF No. 19-1 at 20-21]. This Court therefore cannot offer effective or meaningful relief to Kratville.

Even if Kratville's case had not become moot, however, dismissal would be warranted on the merits. Kratville's exhausted claim amounts to an assertion that the BOP misinterpreted its own policy in punishing him for the proscribed letter to his friend. But the violation of BOP policies or regulations by BOP officials does not *by itself* constitute an independent civil cause of action, whether under *Bivens* or the other statutes invoked by Kratville. *See, e.g.*, *Branch-El v. Carrillo*, No. 5:15-CT-3170, 2015 WL 12964661, at *3 (E.D.N.C. Dec. 7, 2015); *Kunzer v. Magill*, 667 F. Supp. 2d 1058, 1061-62 (D. Minn. 2009). Put another way, to allege that BOP officials violated BOP policy is not the same thing as to allege that the BOP violated Kratville's constitutional rights or necessarily engaged in behavior that is otherwise cognizable in a federal lawsuit. And, as explained above, the question of whether the BOP's behavior violated Kratville's constitutional rights was not exhausted administratively.

11

Kratville's complaint raises claims that are partly barred by sovereign immunity. Those claims that are not barred by sovereign immunity are mostly barred for failure to exhaust administrative remedies. The lone claim that is not barred for either of those reasons has become moot. And even if that claim were not moot, that claim is not a cognizable basis upon which to seek relief in a federal lawsuit. It is therefore recommended that this matter be dismissed without prejudice in its entirety.

## RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY RECOMMENDED THAT:

1. The motion of defendant United States Bureau of Prisons in part to dismiss for lack of jurisdiction and in part for summary judgment [ECF No. 16] be GRANTED as follows:

    a. Plaintiff Michael B. Kratville's claims for monetary relief against the United States Bureau of Prisons be DISMISSED WITHOUT PREJUDICE due to sovereign immunity.

    b. Kratville's claim for prospective injunctive relief concerning the United States Bureau of Prisons and its actions concerning the Boggemann letters be DISMISSED WITHOUT PREJUDICE AS MOOT.

    c. Kratville's remaining claims be DISMISSED WITHOUT PREJUDICE for failure to exhaust available administrative remedies.

    2.      This matter be DISMISSED WITHOUT PREJUDICE accordingly.


Dated: August  31 , 2018                         *s/ Tony N. Leung*
                                                    Tony N. Leung
                                                    United States Magistrate Judge


## NOTICE

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  *See* Local Rule 72.2(b)(2).  All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).